# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

TYLER BANES,                                    )
                                                )
      Plaintiff,                            )
                                                )
                                                )
VS.                                             )      No. 17-1003-JDT-cgc
                                                )
                                                )
TENNESSEE DEPARTMENT OF                         )
CORRECTION, ET AL.,                             )
                                                )
      Defendants.                           )
                                                )

---

## ORDER TO MODIFY THE DOCKET, DISMISSING COMPLAINT, CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH AND DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

---

The *pro se* Plaintiff, Tyler Banes, filed a complaint pursuant to 42 U.S.C. § 1983 on January 9, 2017, while he was incarcerated at the Hardeman County Correctional Facility (HCCF) in Whiteville, Tennessee. (ECF No. 1.) The complaint concerns events that occurred while Banes was housed temporarily at the Madison County Criminal Justice Complex (CJC) in Jackson, Tennessee. After Banes filed the required documentation, (ECF No. 5), the Court issued on order on January 31, 2017, granting leave to proceed *in forma pauperis* and assessing the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 6.) Banes notified the Court on October 27, 2017, that he had been released from prison. (ECF No. 9.) The Clerk shall record the Defendants as the Tennessee Department of Correction (TDOC); TDOC Commissioner Tony C. Parker; Madison County,

Tennessee;[1] Madison County Mayor Jimmy Harris; Madison County Sheriff John Mehr; CJC Lieutenant First Name Unknown (FNU) Long; CJC Administrator Captain Tom Rudder; Officer FNU Greer; and Officer FNU Rogers.[2]

The complaint is a somewhat incoherent collection of allegations, causes of action, and legal arguments which the Court will attempt to decipher.[3] Banes alleges that on December 31, 2015, he was transported to the CJC in Jackson, Tennessee, because he was scheduled for a court appearance on January 7, 2016. (*Id.* at 8.) On Saturday, January 9, 2016, while still at the CJC, Banes allegedly was attacked "for no reason" by two other inmates. (*Id.*) The other inmates allegedly assaulted Banes for forty minutes, then told him not to leave his cell until the next shift change and closed his door. (*Id.*) Banes alleges that he kicked his door for about twenty minutes, but it was not until Banes told some other inmates to beat on the pod window that an officer arrived to open Banes's door. (*Id.*) In a set of confusing allegations, Banes asserts that he asked Defendant Rogers[4] to let him go back out in the pod to call his sister-in-law, who then

---

[1] Any claims asserted against the CJC are construed as claims against Madison County.

[2] The complaint contains misspelled names or incorrect positions for some of the Defendants. The TDOC Commissioner is not Tony Parks but Tony C. Parker. *See* https://www.tn.gov/correction/about-us/commissioner-tony-c--parker.html. Jimmy Harris is the Mayor only of Madison County, not Madison County and the City of Jackson. *See* www.co.madison.tn.us/89/County-Mayor. The Madison County Sheriff is John Mehr instead of John Muer. *See* https://www.mcso-tn.org/sheriff-mehr.html. In addition, Captain Rudder's first name is Tom. *See* https://www.mcso-tn.org/corrections.html. The Clerk is directed to MODIFY the docket to reflect these corrections and additions.

[3] A large portion of the complaint appears to have been copied from one or more complaints in which claims were raised that are unrelated to Bane's allegations in this case. For example, there are references to Corrections Corporation of America (CCA), which is not named as a defendant in this matter. Banes's attempt to modify the complaint to fit his present claims has resulted in allegations that clearly are not true, including the allegation that the CJC is a private, for profit company, (ECF No. 1 at 2), and that the Defendants are employees of CCA, (*id.* at 3). There are also other allegations concerning CCA and/or TDOC that are irrelevant to Bane's actual claims in this case. (*Id.* at 7).

[4] The complaint refers to Defendant Rogers as both Rogers and Rodger in various places.

contacted the CJC and told them Banes had been beaten severely and needed medical attention; Rogers then came to the pod and saw that Banes was bleeding. (*Id.*) Rogers left for fifteen minutes, then returned and took Banes to the CJC clinic; however, they allegedly could not stop the bleeding at the CJC clinic, so Banes was taken to the Jackson-Madison County General Hospital at around midnight. (*Id.*)

At the hospital, Banes alleges he was treated with stitches in his lip and ear. (*Id.*) Tests also were done on his head, and extensive x-rays were done to determine if he had any broken bones or loosened teeth; Banes states that he had two teeth left. (*Id.*) When he was returned to the CJC at approximately 4:30 a.m. on January 10, 2016, Banes was placed in an observation cell, where he remained until he was transported to the Whiteville Correctional Facility (WCF) early the next morning. (*Id.*) While he was in the observation cell, Banes alleges he wanted to write a grievance about the incident, but no one would give him a pen or paper. (*Id.*)

While en route to the WCF, Banes allegedly told the transporting officer he needed to go to the clinic because he was in pain. (*Id.*) He states the CJC did not give the transporting officer Banes's medical records from the hospital or any medication or medical supplies for his injuries. (*Id.*) Therefore, upon arrival at the WCF Banes explained what had happened to Nurse Martin, who gave him pain medication. (*Id.*) Nurse Martin also obtained Banes's records from the hospital. (*Id.*) Banes further alleges that he suffers from post-traumatic stress disorder as a result of the assault and that Nurse Martin helped him get medication for that condition. (*Id.*)

Banes alleges that Defendant Greer moved him from one part of the CJC on A side to a cell on AA so they could paint the A side pod.[5] (*Id.* at 9.) He further alleges that an unidentified officer lacked proper training and was negligent in his or her duty to observe the movement of

_____

[5] Banes does not elaborate, but it appears that he is alleging that the assault happened while he was housed on the AA side of the CJC.

inmates through the surveillance camera, which resulted in his injuries. (*Id.*) Banes also states

there is surveillance footage that shows the conduct of Defendants Rudder, Greer and Rogers at

the time of the incident. (*Id.* at 11.) He seeks compensatory damages. (*Id.* at 21.)[6]

The Court is required to screen prisoner complaints and to dismiss any complaint, or any

portion thereof, if the complaint—

> (1)     is frivolous, malicious, or fails to state a claim upon which relief
> may be granted; or

> (2)     seeks monetary relief from a defendant who is immune from such
> relief.

28 U.S.C. § 1915A(b); see also 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be

granted, the court applies standards under Federal Rule of Civil Procedure 12(b)(6), as stated in

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555-57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). "Accepting all well-

pleaded allegations in the complaint as true, the Court 'consider[s] the factual allegations in [the]

complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*,

631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681) (alteration in original).

"[P]leadings that . . . are no more than conclusions . . . are not entitled to the assumption of truth.

While legal conclusions can provide the framework of a complaint, they must be supported by

factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule

---

[6] Much of the complaint is completely unrelated to Banes's factual allegations. *See also supra*, note 2. There are several pages of extensive, rambling arguments and causes of action concerning denial of due process and equal protection in connection with a disciplinary proceeding that resulted in Banes's placement in segregation. (*Id.* at 9-21.) However, Banes does not allege in this complaint that he was charged with any disciplinary offense or placed in punitive segregation at any time during the time he was housed at the CJC, from December 31, 2015 to on or about January 11, 2016. The Court will not address these causes of action and arguments that are unsupported by any facts in the complaint.

8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"A complaint can be frivolous either factually or legally.  Any complaint that is legally frivolous would *ipso facto* fail to state a claim upon which relief can be granted."  *Hill*, 630 F.3d at 470 (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 328-29 (1989)).

> Whether a complaint is factually frivolous under §§ 1915A(b)(1) and 1915(e)(2)(B)(i) is a separate issue from whether it fails to state a claim for relief. Statutes allowing a complaint to be dismissed as frivolous give "judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327, 109 S. Ct. 1827 (interpreting 28 U.S.C. § 1915).  Unlike a dismissal for failure to state a claim, where a judge must accept all factual allegations as true, *Iqbal*, 129 S. Ct. at 1949-50, a judge does not have to accept "fantastic or delusional" factual allegations as true in prisoner complaints that are reviewed for frivolousness.  *Neitzke*, 490 U.S. at 327-28, 109 S. Ct. 1827.

*Id.* at 471.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed."  *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)).  *Pro se* litigants and prisoners are not exempt from the requirements of the Federal Rules of Civil Procedure.  *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, No. 09-2259, 2011 WL 285251, at *5 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)) (alteration in original); *Payne v. Sec'y of Treas.*, 73 F.

App'x 836, 837 (6th Cir. 2003) (affirming *sua sponte* dismissal of complaint pursuant to Fed. R.

Civ. P. 8(a)(2) and stating, "[n]either this court nor the district court is required to create Payne's

claim for her"); *cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation

to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506,

510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause

of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would

transform the courts from neutral arbiters of disputes into advocates for a particular party. While

courts are properly charged with protecting the rights of all who come before it, that

responsibility does not encompass advising litigants as to what legal theories they should

pursue.").

Banes filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia, subjects,
> or causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress, except that in
> any action brought against a judicial officer for an act or omission taken in such
> officer's judicial capacity, injunctive relief shall not be granted unless a
> declaratory decree was violated or declaratory relief was unavailable. For the
> purposes of this section, any Act of Congress applicable exclusively to the
> District of Columbia shall be considered to be a statute of the District of
> Columbia.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) a deprivation

of rights secured by the "Constitution and laws" of the United States (2) committed by a

defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150

(1970).

The complaint contains no pertinent factual allegations against Defendants Parker, Mehr,

Harris, Long, or Rudder. When a complaint fails to allege any action by a defendant, it

necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

Any claims against TDOC Commissioner Tony Parker in his official capacity are considered claims against his employer, the State of Tennessee. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). However, Plaintiff has no valid claim against the State of Tennessee. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Employees of Dep't of Pub. Health & Welfare v. Mo. Dep't of Pub. Health & Welfare*, 411 U.S. 279, 280 (1973); *see also Va. Office for Protection & Advocacy v. Stewart*, 563 U.S. 247, 253-54 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). By its terms, the Eleventh Amendment bars all suits, regardless of the relief sought. *Pennhurst*, 465 U.S. at 100-01. Tennessee has not waived its sovereign immunity. Tenn. Code. Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71.

Similarly, Banes has no claims against Defendants Harris, Mehr, Long, Rudder, Greer or Rogers in their official capacities. Such claims are construed as claims against their employer, Madison County, which is also a Defendant. When a § 1983 claim is made against a municipality or county, the court must analyze two distinct issues: (1) whether plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). The second issue is dispositive of any claim against Madison County.

A local government "cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't. of Soc. Serv.*, 436 U.S. 658, 691 (1978) (emphasis in original); *see also Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691-92; *Deaton v. Montgomery Co., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "Where a government 'custom has not received formal approval through the body's official decisionmaking channels,' such a custom may still be the subject of a § 1983 suit." *Alkire*, 330 F.3d at 815 (quoting *Monell*, 436 U.S. at 690-91). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Co. v. Dodson*, 454 U.S. at 326 (citation

omitted)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986)) (emphasis in original).

Although civil rights plaintiffs are not required to plead the facts demonstrating municipal liability with particularity, *Leatherman v. Tarrant Cnty Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69 (1993), the complaint must be sufficient to put the municipality on notice of the plaintiff's theory of liability, *see, e.g.*, *Fowler v. Campbell*, No. 3:06CV-P610-H, 2007 WL 1035007, at *2 (W.D. Ky. Mar. 30, 2007); *Yeackering v. Ankrom*, No. 4:05-CV-00018-M, 2005 WL 1877964, at *2 (W.D. Ky. Aug. 5, 2005); *Oliver v. City of Memphis*, No. 04-2074-B, 2004 WL 3316242, at *4 (W.D. Tenn. Dec. 2, 2004); *cf. Raub v. Correctional Med. Servs., Inc.*, No. 06-13942, 2008 WL 160611, at *2 (E.D. Mich. Jan. 15, 2008) (denying motion to dismiss where complaint contained conclusory allegations of a custom or practice); *Chidester v. City of Memphis*, No. 02-2556 MA/A, 2006 WL 1421099, at *3 (W.D. Tenn. June 15, 2005). The allegations of the complaint fail to identify an official policy or custom of Madison County which caused injury to Banes.

Banes also has no claim against Defendants Parker, Mehr, Harris or Rudder to the extent any of them are sued because they hold supervisory positions. Under 42 U.S.C. § 1983, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Thus, "a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official, who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). Furthermore, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not."). The complaint in this case does not allege that any of these Defendants through their own actions, violated Banes's rights.

Banes's primary claims are that the Defendants failed to protect him from the attack by other inmates and failed to provide him with adequate medical treatment for his resulting injuries. For a convicted prisoner, claims regarding a prisoner's health and safety arise under the Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294 (1991). However, pre-trial detainees in state or local custody are protected against mistreatment by prison officials under the Due Process Clause of the Fourteenth

Amendment.  *See Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2000); *Liscio v. Warren*, 901 F.2d 274, 275-76 (2d Cir. 1990).  It is unclear whether Banes was a convicted prisoner or a pre-trial detainee at the time of the assault at the CJC.  However, even if that was the case his claims will be analyzed under Eighth Amendment principles because the rights of pre-trial detainees under these circumstances are equivalent to those of convicted prisoners.  *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242 (6th Cir. 1994) (citing *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir. 1985)).

An Eighth Amendment claim consists of both objective and subjective components.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Curtin*, 631 F.3d at 383; *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010). The objective component requires that the deprivation be "sufficiently serious."  *Farmer*, 511 U.S. at 834; *Hudson*, 503 U.S. at 8; *Wilson*, 501 U.S. at 298.  To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), or that he has been deprived of the "minimal civilized measure of life's necessities," *Wilson*, 501 U.S. at 298 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  "The Supreme Court has held that 'prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners.'" *Bishop v. Hackel,* 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer,* 511 U.S. at 834).

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 297,

302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 303; *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. Thus,

> [a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Eighth Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837-38 (emphasis added; citations omitted); *see also Garretson v. City of Madison Heights*, 407 F.3d 789, 796 (6th Cir. 2005) ("If the officers failed to act in the face of an obvious risk of which they should have known but did not, then they did not violate the Fourteenth Amendment."). The subjective component must be evaluated for each defendant individually. *Bishop*, 636 F.3d at 767; *see also id.* at 768 ("[W]e must focus on whether each individual Deputy had the personal involvement necessary to permit a finding of subjective knowledge.").

Banes does not allege that any named Defendant was aware, prior to the assault, that the inmate who assaulted Banes was a specific threat or posed an excessive risk to Banes's safety. Although Banes states that Defendant Greer moved him from the A side of the CJC to a cell on AA so they could paint the A side pod, he does not allege that Greer knew the move would place

Banes at risk of assault. Banes also does not allege that any Defendant was aware of the allegedly unprovoked attack and had an opportunity to stop it, but failed to do so. He alleges only that an unidentified officer was negligent in failing to observe the movements of the inmates through the surveillance cameras. These allegations are insufficient to allege the subjective component of an Eighth Amendment claim.

The Cruel and Unusual Punishments Clause of the Eighth Amendment also guarantees prisoners the right to adequate medical care. *Johnson v. Karnes*, 398 F.3d 868, 873-74 (6th Cir. 2005). The objective component of an Eighth Amendment claim based on a lack of medical care requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson*, 398 F.3d at 874. Banes's injuries from the assault clearly constituted a serious medical need.

Banes has not, however, sufficiently alleged the subjective component of an Eighth Amendment claim for lack of medical care. He alleges that was taken to the CJC clinic once Defendant Rogers became aware that he was injured. When the bleeding could not be stopped, Banes allegedly was taken to the hospital for emergency treatment. Banes does not alleges that Rogers or any other Defendant intentionally ignored his injuries or that any delay in getting him from the CJC to the hospital worsened those injuries.

Banes also appears to contend the Defendants should be held liable for failing to send his hospital records or any medications with him when he was transported to the WCF. However, there is no suggestion that the lack of hospital records delayed Banes's treatment by the nurse at

the WCF or that the failure to send his medications with him significantly increased his pain. Banes alleges that he was given pain medication by a nurse promptly upon his arrival at the WCF.

Banes's allegation that no one at the CJC would give him paper and pen to write a grievance does not state a claim for denial of due process. First, he does not allege that any of the named Defendants were responsible for refusing his request for pen and paper. Even if that was the case, prisoners do not have a constitutionally protected due process right to an effective grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *McDonald v. Lasslett*, No. 2:18-CV-117, 2018 WL 3867520, at *4 (W.D. Mich. Aug. 15, 2018). Tennessee law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Rienholtz v. Campbell*, No. 99-2148-D/V, 64 F. Supp. 2d 721, 730-31 (W.D. Tenn. 1999).

Banes also asserts claims pursuant to 42 U.S.C. §§ 1985(3) and 1988. However, the complaint does not assert a valid claim under 42 U.S.C. § 1985(3), which prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws."

> [I]n order to state a cause of action under § 1985, the plaintiff must allege that the defendants (1) conspired together, (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, (3) and committed an act in furtherance of the conspiracy, (4) which caused injury to person or property, or a deprivation of any right or privilege of a citizen of the United States, and (5) and that the conspiracy was motivated by racial, or other class-based, invidiously discriminatory animus.

*Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999); *see also Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007). The complaint alleges no facts to suggest that the conduct of any of the Defendants was motivated by racial or other class-based animus. The other federal statute cited by Banes, 42 U.S.C. § 1988(a), does not itself provide a cause of action. *Moor v. Alameda Cnty.*, 411 U.S. 693 (1973); *Henderson v. Reyda*, 192 F. App'x 392, 397-98 (6th Cir. 2006); *see also Cortis v. City of Coleman*, No. 10-13261-BC, 2011 WL 1518901, at *6 (E.D. Mich. Apr. 20, 2011) (noting that §1988(b) is merely a statute authorizing recovery of attorney fees by prevailing parties in §1983 actions).

For all of the foregoing reasons, Banes's complaint is dismissed in its entirety for failure to state a claim upon which relief can be granted.

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Brown v. R.I.*, No. 12-1403, 2013 WL 646489, at *1 (1st Cir. Feb. 22, 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded."). Leave to amend is not required where a deficiency cannot be cured. *Brown*, 2013 WL 646489, at *1; *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed. If it is crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002) ("*in forma pauperis* plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile"); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with

the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."). In this case, the Court concludes that leave to amend is not warranted.

The Court DISMISSES Banes's complaint for failure to state a claim on which relief can be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b(1). Leave to amend is DENIED.

The Court must also consider whether Banes should be allowed to appeal this decision *in forma pauperis*, should he seek to do so. Federal Rule of Appellate Procedure 24(a)(3) provides that if a party was permitted to proceed *in forma pauperis* in the district court, he may also proceed on appeal *in forma pauperis* without further authorization unless the district court "certifies that the appeal is not taken in good faith or finds that the party is not otherwise entitled to proceed in forma pauperis." If the district court denies pauper status, the party may file a motion to proceed *in forma pauperis* in the Court of Appeals. Fed. R. App. P. 24(a)(4)-(5).

The good faith standard is an objective one. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). The test for whether an appeal is taken in good faith is whether the litigant seeks appellate review of any issue that is not frivolous. *Id.* It would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, but has sufficient merit to support an appeal *in forma pauperis*. *See Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case for failure to state a claim also compel the conclusion that an appeal would not be taken in good faith. Therefore, it is CERTIFIED, pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter by Plaintiff would not be taken in good faith. Leave to appeal *in forma pauperis* is, therefore, DENIED. Accordingly, if Plaintiff files a notice of appeal, he must also

pay the full $505 appellate filing fee or file a motion for leave to appeal *in forma pauperis* and

supporting affidavit in the Sixth Circuit Court of Appeals.

For analysis under 28 U.S.C. § 1915(g) of future filings, if any, by Plaintiff, this is the

second dismissal of one of his cases as frivolous or for failure to state a claim.[7]  This "strike"

shall take effect when judgment is entered.  *Coleman v. Tollefson*, 135 S. Ct. 1759, 1763-64

(2015).

The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[7] Banes previously filed *Hill, et al. v. Carroll, et  al.*, No. 1:00-cv-00121 (M.D. Tenn. Nov. 16, 2000) (case filed jointly by Banes and two other plaintiffs, dismissed as frivolous).